**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

ROY D. WILLOUGHBY                                                                                       PLAINTIFF

v.                                           NO. 4:12CV00608 JLH

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration[1]                                                                  DEFENDANT

**OPINION AND ORDER**

Roy D. Willoughby has appealed the final decision of the Commissioner of the Social Security Administration denying his claims for Disability Insurance benefits and Supplemental Security Income, based on disability. Both parties have submitted appeal briefs[2] and the case is ready for decision.

The Court reviews to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

In assessing whether substantial evidence supports the Commissioner's decision, the Court must consider evidence that detracts from the decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. She is therefore substituted for Michael J. Astrue pursuant to Fed. R. Civ. P. 25(d).

[2] Willoughby also submitted a reply brief. Document #11.

would have supported an opposite decision. *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Willoughby alleged that he was limited in his ability to work by head trauma from a July 3, 2004, motorcycle accident and by chronic fatigue. Tr. 224. The Commissioner found that he was not disabled within the meaning of the Social Security Act. The only issue before this Court is whether the Commissioner's decision that Willoughby was not disabled within the meaning of the Act is supported by substantial record evidence.

Willoughby's applications were denied initially and on reconsideration. Tr. 80-85, 88-91. He requested a hearing. Tr. 92-94.

After conducting an administrative hearing at which Willoughby and a vocational expert testified, the Administrative Law Judge[3] concluded that Willoughby had not been under a disability within the meaning of the Social Security Act at any time from his alleged onset date, April 20, 2007, through September 24, 2010, the date of his decision. Tr. 23, 33. On July 24, 2012, the Appeals Council denied Willoughby's request for a review of the ALJ's decision, making the ALJ's decision

---

[3] The Honorable Harold D. Davis.

2

the final decision of the Commissioner. Tr. 1-3. Willoughby then filed his complaint initiating this appeal. Document #2.

After consideration of the record as a whole, the Court finds that the decision of the Commissioner is supported by substantial evidence.

Willoughby was 53 years old at the time of the hearing. Tr. 44. He testified he completed ten and one-half years of school and obtained his General Equivalency Diploma. *Id.* On his Disability Report–Adult, he indicated that he completed twelve years of school in regular classes. Tr. 228. He has past relevant work as a maintenance mechanic and as a chipper. Tr. 32, 71-72, 225-26, 231-35.

The ALJ considered Willoughby's impairments by way of the required five-step sequential evaluation process. The first step is to determine whether the claimant is involved in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (2009). If the claimant is engaged in substantial gainful activity, benefits are denied, regardless of the claimant's medical condition, age, education or work experience. *Id.* §§ 404.1520(b), 416.920(b). Step 2 is to determine whether the claimant has an impairment or combination of impairments that is "severe" and meets the duration requirement. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If not, benefits are denied. *Id.* A "severe" impairment significantly limits a claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). Step 3 is to determine whether the severe impairment meets or equals a listed impairment. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If so, and the duration requirement is met, benefits are awarded. *Id.* If the claimant does not meet or equal a listed impairment, then a residual functional capacity assessment is made. *Id.* §§ 404.1520(a)(4), 416.920(a)(4). This residual functional capacity assessment is used at steps 4 and 5. *Id.* Step 4 is to determine whether the claimant has sufficient residual functional capacity to perform past relevant work. *Id.*

§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If so, benefits are denied. *Id*. Step 5 is to determine whether the claimant is able to make an adjustment to other work, given the claimant's age, education and work experience. *Id*. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If so, benefits are denied; if not, benefits are awarded. *Id*.

The ALJ found Willoughby had not engaged in substantial gainful activity since his alleged onset date. Tr. 25. He found that Willoughby had "severe" impairments, left-sided hearing loss, tinnitus, depression, anxiety and polysubstance dependence. *Id*. He also found he had a symptom not related to a medically determinable impairment, fatigue. *Id*. He found that Willoughby did not have an impairment or combination of impairments that met or equaled a listed impairment. Tr. 26. He judged that Willoughby's allegations regarding the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with the residual functional capacity which he found.[4] Tr. 29.

The ALJ found that Willoughby retained the residual functional capacity for less than a full range of light work. Tr. 28. He determined Willoughby was unable to perform any of his past relevant work. Tr. 32. Based on the testimony of a vocational expert witness in response to a hypothetical question, the ALJ found that there were a significant number of jobs in the economy which Willoughby could perform, notwithstanding his limitations. These jobs included, for example, cleaner I and hand packer. Tr. 32-33. Thus, the ALJ concluded that Willoughby was not disabled. Tr. 33.

---

[4] While there is nothing inherently objectionable about such a finding, it makes judicial review of the next step in the sequential analysis (ability to perform past relevant work) difficult. Review is difficult because the findings do not make clear which limitations the ALJ believed to be exaggerated. *Young v. Astrue*, 702 F.3d 489, 493 (8th Cir. 2013) (Melloy, J., dissenting).

Willoughby advances several arguments in support of his appeal. First, he asserts that the ALJ did not properly consider his GAF[5] scores. The ALJ cited the different GAF scores assigned to Willoughby and their significance. Tr. 29-30. There does not appear to be the uniformity of criteria to judge the value of GAF scores. *See The Conceptual Evolution of DSM-5* 179-82 (Darrel Regier et al. eds., 2011). In fact, the recently published *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013) (DSM-5) dropped the use of GAF scores. *Id*. at 16.

Even before that, the Eighth Circuit had rejected an argument that the ALJ's failure to discuss GAF scores required reversal. *Wright v. Astrue*, 489 F. App'x 147, 149 (8th Cir. 2012) (unpublished). The Eighth Circuit has noted that *Pate-Fires v. Astrue*, 564 F.3d 935 (8th Cir. 2009), upon which Willoughby relies, failed to reference a federal regulation in which the Commissioner declined to endorse the GAF scales for evaluating Social Security claims. *Jones v. Astrue*, 619 F.3d 963, 973-74 & n.4 (8th Cir. 2010) (citing 65 Fed. Reg. 50746, 50764-65 (August 21, 2000)). Consequently, Willoughby's argument is unpersuasive.

Next, Willoughby argues the ALJ erred by dismissing his fatigue as not medically determinable.

> A "severe impairment is defined as one which 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)). The impairment
>> must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs,

---

[5] Global Assessment of Functioning. *Diagnostic and Statistical Manual of Mental Disorders* 32-34 (4th ed., Text Revision 2000) (DSM-IV-TR). The GAF Scale is the fifth axis of the multiaxial assessment. *Id*. at 32. It is a subjective report of the clinician's judgment of the individual's overall level of functioning with respect to psychological, social and occupational functioning. *Id*.

> symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms (*see* [20 C.F.R.] § 404.1527).

20 C.F.R. § 404.1508.

*Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (first alteration in *Pelkey* and second and third alterations in *Martise*).

As detailed below, unlike most cases, there was a significant diagnostic testing done in connection with Willoughby's complaint of fatigue. Tr. 402. Willoughby's problem, in connection with this argument, is that all of the testing came back negative.[6] Congress and the Commissioner have defined what must be found for a "severe" impairment. Willoughby did not meet his burden.

Next, Willoughby argues the ALJ erred in weighing the opinions of "single decision makers" as if they were state agency medical consultants because the opinion-givers did not furnish a medical consultant's specialty code on forms they completed. The ALJ afforded these opinions little weight because they were inconsistent with the evidence of record and did not take Willoughby's subjective complaints into account. Tr. 31. The ALJ's conclusions on this issue were favorable to Willoughby, not harmful to him. Willoughby cites POMS[7] in support of his contention, but POMS are not legally binding on the Commissioner. *Berger v. Apfel*, 200 F.3d 1157, 1161 (8th Cir. 2000).

The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). Willoughby failed to meet that burden.

---

[6] Willoughby points to one place in the record where an examining physician stated that his fatigue seemed to be triggered by stress. A closer examination of the remark leads to a conclusion that, rather than diagnosing fatigue, the doctor was noting that Willoughby contended stress triggered his fatigue. Tr. 494.

[7] Program Operations Manual Systems.

Next, Willoughby asserts that the ALJ's credibility determination is unsupported by substantial evidence in the record as a whole. The ALJ considered Willoughby's subjective complaints in light of the factors of *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984).[8] Tr. 28-31.

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. the claimant's daily activities;
>
> 2. the duration, frequency and intensity of the pain;
>
> 3. precipitating and aggravating factors;
>
> 4. dosage, effectiveness and side effects of medication;
>
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Id*. at 1322 (quoting a statement by the Justice Department that the Eighth Circuit described as "a correct statement of the law concerning the evaluation of pain and other subjective complaints for determining disability") (emphasis in original).

There is little objective support in the record for Willoughby's claim of disability. No evaluations showed medical conditions that were disabling. Furthermore, inconsistencies between the medical evidence and Willoughby's subjective complaints gave reason to discount those

---

[8] The ALJ cited Social Security Ruling 96-7p and 20 C.F.R. §§ 404.1529 and 416.929. Tr. 28. That Ruling tracks *Polaski* and 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) and elaborates on them.

complaints. *See Casey v. Astrue*, 503 F.3d 687, 695 (8th Cir. 2007); *Richmond v. Shalala*, 23 F.3d 1441, 1443 (8th Cir. 1994).

Given the inconsistencies in Willoughby's statements, the lack of medical evidence in support of Willoughby's allegations, the lack of more treatment, Willoughby's daily activities, his functional capabilities, and the lack of restriction placed on Willoughby by any physician, the ALJ could rightly discount Willoughby's subjective complaints. *See, e.g., McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011) (ALJ may discount subjective complaints if there are inconsistencies in the record as a whole); *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (same); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (same); *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (ALJ may discount complaints inconsistent with the evidence as a whole); *Dodson v. Chater*, 101 F.3d 533, 534 (8th Cir. 1996) (after full consideration of all evidence relating to subjective complaints, ALJ may discount complaints if there are inconsistencies in evidence as a whole).

Willoughby underwent a general physical examination in September of 2008. Tr. 494-98. The examination revealed he had a full range of motion in the spine and all extremities. Tr. 496. He was neurologically intact; there was no evidence of muscle weakness or atrophy, and no sensory abnormalities were noted. Tr. 497. Gait and coordination were normal. *Id.* He had the ability to hold a pen and write, touch fingertips to palms, grip, oppose thumb to fingers, pick up a coin, stand and walk without assistive device, walk on heels and toes and squat and arise from a squatting position; grip strength was 100%. *Id.* Circulation was normal. *Id.* There was no evidence of serious mood disorder or psychosis; he was oriented to time, person and place. Tr. 498. The doctor indicated he had no limitation on his ability to walk, stand, sit, lift, carry, handle, finger, see or speak. *Id.* He noted Willoughby was "muscular, fit and strong." *Id.*

On one occasion, Willoughby sought treatment for fatigue. Tr. 402. Lab results from that visit revealed testosterone was normal; thyroid-stimulating hormone[9] was in the normal range; antinuclear antibody[10] was normal; prostate-specific antigen[11] was normal; glucose was 117 (he was not fasting); liver enzymes were "okay"; vitamin B-12 was 1000; hemoglobin and hematocrit were normal. *Id*. The Advance Practice Nurse offered for him to see a cardiologist and have a psychological evaluation; he declined both at that time. *Id*. He indicated that he might follow up as needed. *Id*.

Willoughby reported his medication was "very beneficial." Tr. 455. He was lifting weights and working. Tr. 454, 501, 524. He was also getting out and doing things. Tr. 503.

Willoughby's work activity during the period that he alleges disability supports the ALJ's conclusion that he was not disabled. *See Dunahoo*, 241 F.3d at 1039 (seeking work and working while applying for benefits inconsistent with complaints of disabling pain); *Ostronski v. Chater*, 94 F.3d 413, 418 (return to past work undercuts complaints of inability to perform any work); *Roe v. Chater*, 92 F.3d 672, 677 (8th Cir. 1996) (activities such as work are incongruous with a claimant's contention that he cannot work); *Comstock v. Chater*, 91 F.3d 1143, 1147 (8th Cir. 1996) (work activity belies claim of disabling pain); *Cruze v. Chater*, 85 F.3d 1320, 1324 (8th Cir. 1996) (active lifestyle and performance of odd jobs tend to prove claimant can work); *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996) (wide range of activities, including working two days a week, supports

---

[9] Neal M. Davis, *Medical Abbreviations: 30,000 Conveniences at the Expense of Communications and Safety* 292 (14th ed. 2009).

[10] *Id*. at 42.

[11] *Id*. at 239.

finding of no disability); *Bentley v. Chater*, 52 F.3d 784, 786 (8th Cir. 1995) (seeking work incompatible with disability); *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994) (intention to work tends to prove ability to work); *Starr v. Sullivan*, 981 F.2d 1006, 1008 n.3 (8th Cir. 1992) (even though not substantial gainful activity, a claimant's work activity is determinative of capacity for work); *Thompson v. Sullivan*, 878 F.2d 1108, 1110 (8th Cir. 1989) (any work during claimed disability may show capacity for substantial gainful activity).

The ALJ's credibility analysis was proper. He followed the law and regulations, made express credibility findings and gave multiple valid reasons for discrediting Willoughby's subjective complaints. *See*, *e.g.*, *Finch v. Astrue*, 547 F.3d 933, 935-36 (8th Cir. 2008); *Shelton v. Chater*, 87 F.3d 992, 995 (8th Cir. 1996); *Reynolds*, 82 F.3d at 258. His credibility findings are entitled to deference as long as they are supported by good reasons and substantial evidence. *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).

Willoughby next contends that the ALJ failed to discuss adequately his residual functional capacity as contemplated by Social Security Ruling 96-8p. The ALJ must determine the claimant's residual functional capacity based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations. *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005); *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003); *McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2003); *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).

The ALJ's residual functional capacity determination included physical functioning, mental functioning, and hearing, as called for by the Ruling and 20 C.F.R. §§ 404.1545(b), (c) and (d) and 416.945(b), (c) and (d) (2009). Consistent with the Ruling, the ALJ narratively discussed medical

evidence, subjective complaints and other evidence, recognized that Willoughby's impairments created limitations and incorporated those limitations into his residual functional capacity. Tr. 25-31. A fair reading of the ALJ's opinion reveals that he properly determined Willoughby's residual functional capacity. Willoughby's argument seeks to place the burden of proof on the Commissioner. It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's residual functional capacity. *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004); *Baldwin*, 349 F.3d at 556; *Pearsall*, 274 F.3d at 1217; *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995).

Finally, Willoughby urges that the ALJ erred in failing to consider the application of the borderline age category at Step 5. The Commissioner will not apply the age categories mechanically in a borderline situation. 20 C.F.R. §§ 404.1563(b); 416.963(b) (2009). There is no bright line for how many months constitute a borderline case. *Byes v. Astrue*, 687 F.3d 913, 918 (8th Cir. 2012). However, eight months, as in the instant case, is too distant to be borderline. *Id*.

It is not the task of this Court to review the evidence and make an independent decision, nor may the Court reverse the decision of the ALJ because there is evidence in the record that contradicts his findings. The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ. *Van Vickle v. Astrue*, 539 F.3d 825, 828 (8th Cir. 2008); *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992).

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing and the medical and other evidence. There is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ

in this case. *Richardson v. Perales*, 402 U.S. at 401, 91 S. Ct. at 1427 (quotations and citation omitted); *see also Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Commissioner's decision is not based on legal error.

## CONCLUSION

The Court affirms the final determination of the Commissioner. Roy D. Willoughby's complaint is dismissed with prejudice.

IT IS SO ORDERED this 17th day of January, 2014.

                                           */s/ J. Leon Holmes*
                                      J. LEON HOLMES
                                      UNITED STATES DISTRICT JUDGE